The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. You may be seated. Mr. Moravec? Yes, Your Honor. Good morning. Good morning. You may proceed. May it please the Court. My name is Joseph Moravec. My client, Fridis Ortez Reyes, was granted asylum in the United States, but through the misapplication of the wrong statute, USAIS would see him separated from his wife rather than obtain derivative status for her through a petition to USAIS. The case today concerns whether USAIS is permitted to apply the wrong statute when evaluating a discretionary application, and then whether that decision to apply the wrong statute is protected and insulated from this Court or any Court's review. In effect, USAIS is asking this Court for unreviewable statutory interpretation. The Court below dismissed because the INA generally bars review of discretionary applications, but it is not within the agency's discretion to apply the wrong statute, and that remains reviewable legal error. Specific. Counsel, how do you understand that argument that what is happening here is a statutory interpretation, which statute applies and how do they relate? But how does that argument survive our decision in Chavannes, and in particular the argument that the petitioner made there that once you had made a terrorism finding, the ultimate decision was no longer discretionary? And we said, no, Congress has said this is statutorily discretionary. Sure. So the Court in Chavannes says, yes, there are these ultimate discretionary decisions, but the Court also recognized that its decision in Moore from a few years earlier is still good law. At least in dicta it said, Moore v. Fraser says, yes, the ultimate discretionary decision is not reviewable. But if the agency is going to apply the wrong statute, it doesn't have the discretion. I appreciate the Moore. I want to hear a little more about that. But I'm really talking about there, it seemed like that case had three parts. It kind of interpreted Patel, then it interpreted an argument that the ultimate decision itself, while it could be discretionary, was in this circumstances not discretionary. And we said that doesn't matter. It's not a functional sort of test. It's statutorily discretionary. Would that rationale not apply here? No, because I think there's three things that really go into an ultimately discretionary decision. The first thing the agency has to do is decide which statute governs the application. The second thing is it has to decide whether the applicant is eligible under that statute. And the third thing is they have to weigh all of the discretionary factors. Everybody, including myself, agrees the Supreme Court's precedence, the statute itself, take away the third question, the ultimate discretionary question. Courts are still grappling with that middle question about what happens when you make eligibility determinations. But what we're dealing with here is that initial question is whether or not the agency is free to read other statutes and say this statute applies. And in this case, whether 8 U.S.C. 1231A5, which has no bearing on derivative asylees, whether they can read that statute in to go. And that question, that initial question has nothing to do with discretion and it is not within the agency's discretion to read in other statutes. I don't think either you or your colleague made this point, so I may be off base. And if it comes too far out of the left field, just say whatever. You can move on. But 1252B9, which is I think referred to as the zipper provision, says that any questions of law or fact arising from actions taken to remove or proceedings to remove must be brought in one proceeding. Does that apply to this case? And if not, why not? And I appreciate we could file additional briefs if it becomes an issue for the panel. I'm happy to address it more fully. But I don't think so. And here's why. The question we're ultimately dealing with isn't a decision to remove Mr. Ortiz's wife. The question we're deciding is whether or not she's eligible to receive from him a derivative asylee status. And so those are two separate things. The questions that are barred by B9 are really questions related to detention, to the actual putting somebody on a plane and removing them. I don't think that's right. I think, I mean, I think there's Supreme Court case law that says potentially cat decisions fall within that, which don't affect removal. And the specific language is arising from an action to remove. And why is it, why isn't a claim for derivative asylum not arising from the government's action to remove your client? Well, to be clear, my client, Mr. Ortiz, is not removable. I'm sorry. And that's the distortion I think that matters, is he's petitioning for his wife under a provision that doesn't deal with, you know, removability and pressure. It deals with ultimately the need for family unity. The regulations talk about... I got you. I'm sorry to cut you off. So your point is since he, there's no removability issue as to him, it doesn't arise from removability. If this was her petition, perhaps it might. It might be different. The statute lays out that the petition is in his name. It's his right to confer that benefit. And as the statute says, he may apply for, there's nothing that says he has to and there's nothing automatic about bringing that application for her. The other thing is if B-9 is read so broadly to encompass anything that relates that tangentially to removal, it would certainly swallow the rest of 1252. Because what we're dealing with here, what the court has said is these discretionary applications and petitions are supposed to be really evaluated under 1252A. And A-2B, specifically here. And so the naming of the petitions, the naming of that discretionary relief here, suggests that B-9 isn't where we should be looking for our guidance. If we're to agree with you on the jurisdictional issue and find that we do have jurisdiction, looking to the merits, reading just the plain text of Section 1231A-5, it seems, it says that it prevents any person with reinstated prior removal orders from receiving any relief under this chapter. Those are the words of the statute. And the section for derivative asylum relief falls within this same chapter. It's 1158B-3A. So doesn't that mean that someone who was with a reinstated removal order is ineligible then for derivative asylum status? Respectfully, no. And on the merits, which my colleague will say we didn't actually get to and didn't have full briefing, on the derivative statute is 1158B-3. And the applicable regulation is ACFR 208.21. And it lays out the statutory bars. They give five bars that say if you have, if you fall under one of these five statutory bars, then you're not eligible. But the regulations and the statute both make clear that this is only for people who aren't otherwise eligible for asylum. 1158B-3 specifically says, may, if not otherwise eligible for asylum. But the 1231A-5 suggests that she's not eligible for any relief under the chapter. Isn't this relief under the chapter? And our reading out of the plain text is that it doesn't say that she's not eligible for any relief. She's not eligible to apply for any relief. And that's this Court's decision in Mejia from several years ago, is that even though the asylum statute says everybody in the United States may apply for asylum, 1231A-5 is read to preclude that. She's not eligible to apply. I concede that, and we concede that in our briefing throughout. But she's not the applicant. She's the beneficiary. The question at issue is whether Mr. Ortez, who's been granted asylum, may apply for her. And the only statutory bars that apply are contained within 1158B, as defined in the regulation, as made clear in the regulation, 208.21, where Section C says specifically they may apply. And it says regardless of the status of that spouse in the United States, CIS contemplated that no matter what the status of the beneficiary in the United States, as long as they didn't meet one of those five statutory bars, they should be granted derivative status through the spouse. The decision here is that USS would like to read in this other statute, 1231A-5, which has no basis in the statute that is an extension of statutory interpretation. And for this Court today, that decision goes beyond the discretion of the agency. And so the Court should find that there was jurisdiction and reverse the district court as the jurisdictional question. And either the Court can reach the merits, which we can continue addressing and I'm happy to do, or remand it for us to deal with the merits before the district court. But what's clear today is the agency doesn't have unreviewable statutory interpretation regarding the standards which it is going to apply to evaluate these applications. And so the Court has to allow review of its decision to apply the wrong statute. I think what will come up, I think the question for this Court ultimately is the language from Patel. And whether or not the Court there, you know, closes these other questions as to eligibility. Respectfully, it doesn't. And I think that's recognized in Chabon. It's also recognized in Barfa last year, again by the Supreme Court in a unanimous opinion, that while it did close jurisdiction in that case, the underlying 11th Circuit decision and the Court there really lay out that three parts that I brought up at the beginning, the three parts of analysis, that there is the statutory applicability, then the eligibility questions, and then a discretionary determination. And two and three, you know, two we might still waffle about, but the first question, which statute applies, that's under this Court's precedent and more as recognized in Chabon, which Judge Gregory, you joined that opinion a few years ago. We still recognize more to be good law. Can I follow up on more? It sounds like you're not contesting Chabon's decision that B-2, that the Patel logic applies to B-2 as well as B-1. You see where I'm going with that part? That was one of the decisions it made, is that Patel was B-1. We think it applies to B-2. It doesn't sound like you're really quarreling with that. You're just saying the nature of the decision is more like a more decision than a discretionary decision. Well, I'm certainly not happy with the Supreme Court, which in Patel says we don't need to decide this issue. We're not going to decide this issue, but here in DICTA we think there might be. And then this Court in Chabon says, well, it's the Supreme Court. Whether you're happy with the Supreme Court or not, you've got to be not only not happy with them, you've got to be not happy with us, too. But I think this Court in Chabon, the decision, the reason we cited it is it still recognizes the distinction. And in Patel and in Guarfa, the Supreme Court says we're not going to reach that issue. Here's what we might think about it. The parties in that case argued about the dangers of foreclosing USCIS decisions from review at all. But we then interpreted that to apply to B-2, and I'm trying to see. That's law binding us, right? Or you're not challenging that? I don't think there's a way for me to challenge it to this panel, that the decision to extend it to B subsection 2, no, I don't think so. Now, one last question about Moore. Wasn't the question in Moore about the authority of that agency to take some sort of action? I mean, I agree with you it's a legal in nature decision as opposed to the application of facts to law. But our discussion about it in Chabon seems to talk about the fact that it's a legal in nature decision. It's removed from the adjustment of status considerations. So it's not just that it's maybe legal, but it is not part, it's not like a preliminary step. It's not part of the adjustment of status consideration. And that's why it didn't affect the Chabon decision. Sure. I want to answer your question, but I'm out of time. Can I answer the question? You may. Okay. The issue in Moore is that there was an adjustment of status based on, and a visa petition based on, that was barred based on the Adam Walsh Act. And that prevented certain people from being eligible if the agency made a discretionary no risk determination or denied on that basis. The question for the court in Moore was, well, which version? Because that had been amended. And so the question is, which version of the statute applied? And in that case, it was at least the same statute. It's just a question of which version. In this case, the question is, can we read in a completely other statute that doesn't bear on positions? And so for that reason, I think this case, as the court recognized in Chabon, it might have been a closer case if we'd had a question of which statute applies. This is that case, respectfully. Thank you, Mr. Miller. Thank you. Good morning, Your Honors. Christian Cooper, Special Assistant United States Attorney from the U.S. Attorney's Office of the Eastern District of Virginia, Department of Justice. And may it please the court. The sole issue in this case is whether the district court erred in determining that it lacked subject matter jurisdiction to review U.S. CIS's decision to deny the Plaintiff Appellant's Form I-730 Refugee Asylee Relative Petition, which the Plaintiff Appellant filed on behalf of his spouse. The Immigration and Nationality Act couldn't be more clear. Decisions that are specified to be in the discretion of the Attorney General or Secretary of Homeland Security and his or her designees are immune from judicial review under 1252A2B2. This court confirmed that approach in Chabon v. Jodoux. And as the Supreme Court recently stated in Buarfa, may clearly connotates discretion, and the INA provides U.S. CIS may grant an alien derivative asylee status pursuant to Section 1158B3. Indeed, whether the Plaintiff Appellant presents a question of law, a question of fact, or a mixed question of law and fact, the district court properly found that it lacked jurisdiction to review the Plaintiff Appellant's claims. Mr. Cooper, your reading and your position have been very clear. So you would say, this is hypothetical obviously, if a person is applying for derivative status for the spouse and the application is made and they have evidence that the person is married to that person and they stop it right there, no, you're not married. And just ignored the documents that were not disputed and said, no, you're not married, you're not eligible to go any further. You're saying this court would have no jurisdiction to deal with that situation? I just want to make sure how the extent of your jurisdictional argument is. I'm not asking about the Supreme Court, I'm talking about you, your argument. Is that the logical extent of your argument that if they said, I see the documents, you're married, I don't dispute it, but you're not going to get derivative status. End of story, period. Is it your argument that this court, third branch, judicial body, could not intervene, would have no jurisdiction? Is that right? From the reading of Patel v. Garland and Chabon, I believe that would be correct, Your Honor. Let's just take this the other direction. What if there was a ruling that expanded the definition of children to include nieces and nephews? Would that also be unreviewable? If there was a niece who somebody said, I want to get derivative asylum for my niece, and derivative asylum was granted for a niece, even though the statute clearly only covers spouses and children. Would that also be unreviewable? To understand your question, Your Honor, you're asking if the reviewability of whether or not a person is a child would be unreviewable under the statute, correct? If there was a clearly erroneous interpretation of the statute, would that be unreviewable? Is the government's position that from the reading of Patel v. Garland and the Chabon case, that any decision, whether it be a factual or legal determination, is immune from judicial review under Section 1252A2B2? For anything that the statute prescribes as in the discretion of the Attorney General or the Secretary of Homeland Security? Would a bill on the other side divided the decision-making process into three stages? What law to apply, whether applying that law to the facts, and then the discretionary application? And conceded that the third step of that is clearly discretionary and unreviewable, but said that this case falls within the first step, what law to apply. So it's the government's position that even if we're talking about what law to apply, that determination is also unreviewable? From the reading under Moore, I think there's a, I can distinguish from what I believe this first step is, as opposed to how my co-counsel brought, or my opponent counsel brought it forth. So I think what we're getting at is the issue in Moore specifically, and how Moore you were able to, how the court decided it had jurisdiction to review which specific statute to apply. In Moore, one of the things that Moore specifically held in that Chabon confirmed, is that in Moore, it didn't go to the effect as how USCIS was exercising that discretion. And because they weren't challenging how USCIS was exercising discretion, they could review it in Moore. But here, this is a challenge to how the USCIS used its discretion to deny the Form I-730. And I think... I didn't use the discretion by saying I'm going to read in a different provision, as opposed to saying I'm going to look at all the facts, and granted, you look at the facts, discretion. We don't think you did. But to just sort of come in and swoop out and say no, we're going to apply this, it can't be just full of discretion there. It would make no sense. I mean, right? For example, then you would say, so they say, you know, we're only going to grant the I-730 to people who are of European origin. You could do that, right? Just say, well, other continents and people and whatever. If you don't come from Western Europe, we're not going to grant it, right? We could do nothing. We could just, well, discretion. Is that discretion too? I understand your point, Your Honor, but I want to stress that... I'm not making a point. This is a question. Is that right, that they could just do that? Just say, no, we're going to pick that continent? As a matter of fact, not the whole continent, but just the Western aspect of Europe, you know, not Southern. And that kind of thing. And we'd do nothing. We'd just sit back and say, well, aren't you upending the whole idea of what Congress does? I don't think Congress is meant to be an orderly way. You have the discretion, but you do have to at least get people at the table with the right law, and the right idea, and the right constitutional context of it. But you're saying, no, you just have a blank slate, tabula rasa, and we could do nothing. That's what it would just devolve to, wouldn't it? Respectfully, Your Honor, for that specific hypothetical, I think there's underlying constitutional questions when it comes to that as well. And I am not opined to provide... I have not prepared for such type of question, and I do not know the answer to that question. But I want to stress that... Let me ask you about that, because I had asked your colleague about whether... Is there an exception to the unreviewability of certain decisions, including ones that fall in that discretionary bucket, for questions of law and constitutional questions? And that's kind of how I was trying to figure out, is this a claim that that part of 1252 applies to, for just the good questions that Judge Gregory and Judge Byrne are asking? And that seems to perhaps raise the question of whether this is a question of law that falls under 1252B9, the zipper provision, or at least I'm wondering about that. Do you have a position on that? I do not have a position on whether section 1252B9 applies in this case. But I do want to specify the specific question of law and how questions of law and constitutional claims can be brought in a petition for review in front of a circuit court. So that is in section 1252A2D. A2D specifically only applies to those who are seeking relief in removal proceedings. This court, and I believe it was Lee or Rowland, has explicitly said that that exception or that ability to raise in the petition for review only applies to those that are in removal proceedings, and it does not apply to section 1252A2B2. So that means you believe, your answer has to be there is no provision for constitutional challenges, you know, if the claim is under, I know you said you weren't prepared to talk about, I'm not trying to push you in there, you're not prepared to talk about, but it seems like that's the implication of what you just said. Yeah, and I think it's important to note that in, I believe, I'm going to butcher this name, so I'm sorry. Pope, Profilet, Profilet v. Cuccellini. In that case, there was a question, there was a constitutional question that they raised. And the court also found that it did not have jurisdiction to review that question, that constitutional question. And a decision to revoke an I-130 petition pursuant to section 1252A2B2. How do you square your position with our decision in Moore? In Moore, we specifically say, we talk about distinctions between discretionary decisions and those that are not discretionary. Even though the statute contains discretionary language, it doesn't mean that every decision under the statute is an exercise of discretion. Thank you for that question, Your Honor. Specifically, I think one of the big distinguishes for Moore in this case, which Siobhan identified, is that the petitioners in Moore were not challenging how the agency is using its discretion or how it's being exercised. Well, they're not challenging that here either. They're saying the wrong statute was applied. They're saying that an incorrect law was read into the decision. This isn't a challenge of a discretionary determination. It's a challenge of a legal determination, that he was statutorily ineligible to file for derivative asylum on behalf of his wife. That's a legal determination. It's not a question of exercising discretion over this particular individual. You are correct, Your Honor. I agree that this specific challenge is to a statutory eligibility legal determination. But specifically, Siobhan, in Siobhan clearly, there was also a legal or statutory eligibility question that was raised. And that was whether or not the applicant at that case was inadmissible. And they found that they were inadmissible. But isn't that at least a different – I mean, eligibility seems to me to involve determining whether certain factors exist and, in that case, applied to the bar against terrorist activity. But it was looking at factors for an individual and whether they qualified for being engaged in terrorist activity. So that seems like more of a mixed question of law or fact. I mean, you've got facture and a plenum to the law. This doesn't seem to have anything to do with anything but law. I understand, Your Honor, but I think it's important to note that the underlying bar in Siobhan was a legal bar. It was under a legal determination that was made pursuant to 1182. And this is the same case here where there was an illegal eligibility where underlying, like you say, it's a quasi – if it's a quasi question of fact or law. This could also – 1235A – sorry, 1231A5. You would also have to look at the facts to see if that person had a reinstated removal order. The question here isn't whether they looked at it and applied it correctly. The question is whether it should be applied at all. That's what your colleague on the other side is saying. They're saying that it shouldn't be applied at all, because it only applies when the individual applying for relief is statutory ineligible, not their spouse or child. And so the question they're presenting is a question of law, not a question – a mixed question of law and fact. You began by saying that we were – that we could not review questions of law either, that that was also – we are also precluded from reviewing questions of law. And that is still the government's position in at least this realm and at least when it comes to Section 1252A2B2. You began by saying – you opened by saying there's only one question presented on appeal, and that's the question of jurisdiction. If we were to disagree with you and find that we do have jurisdiction, could we not then proceed to the merits of the matter? This court has its discretion to whether or not to proceed on the merits in this matter. If they were, we would ask for additional briefing on the matter and be able to brief that subject specifically, as this appeal was based on only the jurisdictional grounds and the district court only addressed the jurisdictional grounds in its decision. But ultimately, if the government were to find that – or if this court were to find that jurisdiction existed, the government would request that it would remand it back to the district court as the district court – so that the district court can analyze the underlying facts and legal claims made in the complaint. So you don't have a position right now that you want to argue on the merits? No, Your Honor. We would respectfully ask for more briefing on that matter, as it was not addressed in the decision below, which is why we do not think – we don't have the ability to address it here. If the court has no more questions, I can be seated. Thank you, Mr. Cooper. Thank you. Thank you. Mr. Moravec, you have some time reserved. Yes, I just want to make two brief points. One is – my colleague says that the statute 1252A2B2 is clear that all of the decisions of the agency, including, as I understood him, legal challenges, legal questions, are specified to the discretion of the Attorney General or the Secretary of Homeland Security. But that – the specified to be within the discretion is the key phrase. This court in Moore went through that analysis that we're asking for here. The government relies on Lee, but Moore contrasts Lee and says, nowhere is the decision of which version of a statute applies to the adjudication of pending petitions committed to discretion. The agency doesn't have the discretion from that statute – from the jurisdictional statutes. The agency has no discretion to just apply the wrong statute. The other thing is, in going back to the actual underlying USCIS decision, the government says, well, there's – it's just about how the agency applied its discretion. You know, go back and look at the decision. Well, in the Joint Appendix at 21, that's the factual analysis of the agency, and it says you have established your beneficiary is your spouse and that your marriage is both legal and bona fide. To Judge Gregory, your point – your hypothetical is the agency found what it needed to find, that she was eligible, and then applied a totally different statute to otherwise find that she's not, and to deny the application. The reading in of that couldn't be more clear, and under this Court's precedence, the agency doesn't have the discretion to read in that statute. The Court should reverse the district court's finding that we've lacked jurisdiction to consider the misapplication of the statute. So if – playing that out, let's assume you're right that, you know, the use of the other statute to say you're ineligible is something we courts have jurisdiction to review. Could the agency say, yeah, you're eligible, but it's a discretionary decision about whether to grant the derivative asylum, and we think even if it doesn't make you ineligible, that this other statute that the agency relied on could be something it could consider in denying relief? Yeah, I think in these types of discretionary decisions, there are field manuals for the adjudicators that indicate how they're supposed to weigh certain factors. Those are ultimately discretionary factors that wouldn't be able to be challenged, but those manuals, those guidance documents make clear that just like an application for asylum that this Court might see come through a removal proceeding and a petition for review, there's lots of precedent to say asylum denials on discretion are supposed to be exceptionally rare. There's five statutory bars that are here. They all relate to terrorism, serious nonpolitical crimes, particularly serious crimes, significant felonies. The denial on the basis of discretion to somebody who's been granted protection in the United States to have their spouse also be with them should also be exceptionally rare, not on the basis of a whim or the misapplication of a statute. And so, yes, the agency would have the first bite of that apple. What we ask the district court is vacate this decision and either order them to apply the right statute. The agency could then go back, not apply 1231 as a complete bar, weigh the facts and then make a decision. That decision ultimately might become unreviewable based on what they decide, but that's not my point today. So if it's part, if this, I mean the consideration of the statute and the policies perhaps arising from this statute may or may not be something that could be taken into account on the decision. Your point, though, is that's the decision that you have to go through, not just stop us at the door. Sure. U.S.S. has to get to that point. At some point in the future, though, they'll likely make a new decision where they might evaluate his history, her history, their marriage, their children who are U.S. citizens, those kinds of factors and decide. You would still have to run the gauntlet of discretion. I certainly would. It's not the end here. And this court and the district court neither has the authority to order CIS to make a particular decision to grant relief, to order them to grant the petition. But the court has the authority to order them to make the decision using the right statute. All right. Thank you, Mr. Cooper. Mr. Moravec, Mr. Cooper, thank you. Well, we'll come down and recounsel and proceed to our next case.
judges: Roger L. Gregory, A. Marvin Quattlebaum Jr., Nicole G. Berner